PITTMAN'S ADMINISTRATOR, PLAINTIFF AND RESPONDENT, VS. REBECCA L. MYRICK, DEFENDANT AND APPELLANT.

1. Where there is an entire failure to state facts sufficient to constitute a cause of action, in a complaint under the Code, a failure to demur is not a waiver of such defect, but advantage can be taken of it at any stage of the cause.

2. It is a recognized doctrine that an Appellate Court may look beyond the bill of exceptions, and consider vital errors apparent on the face of the record, as where the complaint clearly shows that a right of action in the plaintiff does not exist.

3. R. L. M. and F. R. P. were administratrix and administrator of the estate of J. T. M., and F. R. P. being desirous of leaving the State, and of being relieved of the duties and responsibilities of administering, it was agreed that he should surrender the assets to her and she should give him a bond of indemnity, and she with a surety executed to him a bond, which, after reciting the circumstances, concluded with the condition "that if the said R. L. M. shall pay the above claims, [enumerating several claims against the estate in behalf of third parties,] as the same shall be just and proper, and hold the said F. R. P. harmless and forever discharged from said debts or demands, and all other debts or demands that may be brought against said estate, and against all claims and demands of whatever character that may be brought or presented against F. R. P. as administrator as aforesaid, then," &c.; and the alleged breach of the condition was that she had refused to pay a debt of the intestate due to the estate of one H., of

which the said F. R. P. was administrator: *Held*, That this was a bond of indemnity only as to all claims against the estate of M. which were not due to F. R. P. in his own right, and not a bond upon which he could recover against her claims due to others; and that he could allege a breach only after his liability growing out of the administration of the estate of M. had been ascertained; that the bond created no new personal obligations to pay the debts, beyond the available assets of the estate of her intestate.

Appeal from the Circuit Court for Jackson county.

The facts of the case are stated in the opinion of the court.

*Geo. S. Hawkins* and *J. F. McClellan* for Appellant.

*D. L. McKinnon* and *W. H. Milton* for Respondent.

THE CHIEF-JUSTICE delivered the opinion of the court.

This case was commenced under the late Code. Rebecca L. Myrick (widow of John T. Myrick) and Frederick R. Pittman were administering upon the estate of John T. Myrick, deceased, in Jackson county, Florida, in 1868, when Pittman being desirous of going to California and of being relieved of the responsibilities of administering, and having in his hands a considerable amount of the personal assets of the estate, and so that he might be held harmless against the claims which had been or which might be presented against said estate, and she being anxious to obtain control of the estate, believing she would thereby be benefited, she, together with one Joseph W. Russ as her surety, entered into a bond to Pittman in the penal sum of five thousand dollars, with the conditions annexed: That whereas, Mrs. Myrick had applied to the court for the setting off of her dower in the estate of her husband, and it appearing that there is not sufficient property or assets in the hands of the administrator and administratrix to satisfy the debts or demands and her dower interest; and whereas, some of the debts have

been settled by them, and there are outstanding the following claims, to wit: "claim of A. T. Stewart & Co., about $400; claim of type founders in New York, about $200; claim of E. O. Estes, about $300; claim of J. T. McKinne, about $300; claim of C. F. Britton, administrator, about $120; claim of F. R. Pittman, administrator of B. B. Hathaway, $550; claim of F. R. Pittman as administrator of the said John T. Myrick, and as Clerk of the Circuit Court, about $600; and claim of James M. Sanderson as attorney for said estate, about $300; amounting to about $2,500; and whereas, the said Rebecca L. is willing to undertake the payment of said claims and demands and others against said estate, if the same shall appear to be just and proper, provided the said Frederick R. Pittman will turn over to her all of the assets in his hands as such administrator: Now if the said Rebecca L. Myrick shall pay the above claims as the same shall be just and proper, and hold the said Frederick R. Pittman harmless and forever discharged from said debts or demands, and all other debts or demands that may be brought against said estate, and against all claims and demands of whatever character that may be brought or presented against the said Frederick R. Pittman as administrator as aforesaid, then this obligation to be void, otherwise to remain in full force and virtue."

This suit is brought by the administrator of F. R. Pittman against the obligors in this bond. The complaint alleges that the bond was executed in pursuance of his desire that he might be "released from his responsibilities as said administrator so that he might be held harmless against the claims which had been presented, or might hereafter be presented, against said estate;" that in pursuance of the arrangement he turned over to her all the assets of the estate in his possession; that among the claims against the estate was a note executed by John T. Myrick, the intestate, dated April 30, 1861, whereby he promised to pay F. R. Pittman, exec-

utor of B. B. Hathaway, $332.83, with interest at eight per cent. per annum, payable one day after date, and that she refuses to pay said note.

An amendment to the declaration alleges that Mrs. Myrick was by said arrangement "to have the entire and sole control of all said assets, and to receive all the commissions, compensation and emoluments arising from the aministration of the estate;" that the note referred to was a just and proper claim against said estate, and she had in her hands ample assets of said estate to pay said note and all other claims against said estate that were just and proper.

The answer contains a recital that a demurrer to the complaint had been overruled, and that by leave of the court Mrs. Myrick filed her answer. No demurrer appears in the record. Russ, the co-obligor, made no answer, and it does not appear that he was served with summons. The cause came on for trial, and a verdict was rendered in favor of the plaintiff against the defendant, the damages being assessed at $760.89, upon which final judgment was rendered May 24, 1877.

Various exceptions were taken to the ruling of the court in the course of the trial, and to the charge of the court to the jury, which it is unnecessary to notice in view of the conclusions of the court.

In examining this record the first question that presents itself is, whether the complaint "states facts sufficient to constitute a cause of action." A defect in this particular is not waived by failing to demur. (Code, sec. 99.) A mere neglect to observe forms of pleading does not constitute such a defect as to make the complaint so insufficient, but if there be a total absence of the allegation, suggestion, or allusion to facts without which there can be no liability inferred, there is then a failure to state facts sufficient to constitute a cause of action.

An incurable defect is not waived by any pleading, but

may be taken advantage of whenever the parties are before the court. 8 Howard Pr. R., 159 ; 18 Barbour, 494 ; 37 N. Y., 640 ; 2 Bosworth, N. Y., 125.

But if the proofs disclose facts which, if pleaded, would give a right of action, the court may, when it would not substantially change the cause of action or defence, allow an amendment by conforming the pleading to the facts proved. Code, sec. 123.

This is not an " incurable defect." We will examine this case with reference to these rules, and if it appears that the plaintiff has stated and proved a case which demonstrates that he has no right of action, we cannot allow the judgment to stand, for it cannot be said that substantial justice is obtained by a judgment to which the plaintiff is clearly not entitled by his pleadings or proofs.

And the doctrine has been fully recognized by this court that an appellate court may look beyond the bill of exceptions and consider vital errors apparent on the face of the record, where such errors have not been waived by the pleadings. (Proctor vs. Hart, 5 Fla., 465 ; Crosby vs. Houston, 1 Texas, 203, 224.) And where the objection goes to the foundation of the action, and shows the entire absence of a right of action in the party on which to rest the judgment, it will not be deemed to have been waived by an omission specially to point it out in the assignment of errors. Wetmore vs. Woodhouse, 10 Tex., 33 ; Watts, et al., vs. Waddle, 6 Peters, 402.

We have seen that where a complaint does not state facts sufficient to constitute a cause of action, the defect is not waived by a failure to take advantage of it by demurrer. (Code, sec. 99.) The liability of the defendant in the case at bar depends upon a breach of the condition of the bond mentioned in the complaint, and the question arises whether the plaintiff shows, either by the pleadings or proofs, that the defendant has been guilty of a breach.

The condition of the bond is that "the said Rebecca L. Myrick shall pay the above claims as the same shall be just and proper, and hold the said Frederick R. Pittman harmless and forever discharged from said debts or demands, and all other debts or demands that may be brought against said estate, and against all claims and demands of whatever character that may be brought or presented against the said Frederick R. Pittman as administrator as aforesaid." The complaint alleges that Mrs. Myrick has refused to pay the note of the intestate payable to the estate of Hathaway, of which Pittman was the administrator, and that this is a breach of the condition of the bond for which he may re-recover the amount due on that note.

Several claims are expressly named, and other possible claims are included in the condition, all of which she obligates herself to Pittman to pay, and save him harmless and discharged therefrom, and to protect him against personal liability as administrator of the estate of Myrick on account thereof. None of the claims mentioned are the personal demands of Pittman against Myrick or his estate, except a "claim of F. R. Pittman as administrator of the said John T. Myrick, and as Clerk of the Circuit Court, about six hundred dollars."

This personal claim is not demanded by the plaintiff in this suit, but he claims a judgment for the amount due from the estate of John T. Myrick to other parties, in which no personal interest is alleged or proved to be in himself. It is not alleged or proved that he has paid any of these claims, or that he has been sued, or judgment obtained against him as administrator or otherwise upon any of them, or that they are his property, or that the money is in any manner due to him individually. These claims, so far as they remain unsatisfied, are due to the parties enumerated or referred to, according to the plaintiff's complaint.

Suppose none of these claims against the Myrick estate

have been paid by Mrs. Myrick, and that she has refused expressly to pay them, has Pittman, under the conditions of this bond, a right to sue Mrs. Myrick and recover in his own name the amount due to A. T. Stewart & Co., and to the type founders, and to Estes, and McKinne, and Britton, and Sanderson, on the ground that she obligated herself to him to pay them and save him harmless; and suppose we were to hold that her failure to pay them was a breach of the conditions of her bond, and sustain a personal judgment against her in his favor for the amount of all these claims, and he collects the money by execution out of her property; what defence does this afford to her when she is sued as administratrix by Stewart and the others against these identical demands?

We cannot conceive that she could defend herself against such suits by pleading that she had paid them to her co-administrator, and thus it might appear that she would pay the identical claims twice, once to Pittman upon an irreversible personal judgment, and again as administratrix out of the assets of the estate of her husband.

Such a doctrine as is contended for to uphold this judgment cannot be sustained. The bond is clearly an obligation on her part to indemnify and save harmless F. R. Pittman on account of any liability growing out of his having been an administrator and his surrendering to her the assets of the estate for administration.

The consideration of the giving of the bond, as it recites, and as the complaint alleges, was that both parties were administering, that some debts were paid, and other debts were to be paid; that it was doubtful whether the estate would turn out to be solvent; that he wished to leave the State, and to transfer the burden of the administration to other hands; and that he should be protected in so doing from suffering any loss or damage growing out of his administration of the estate and transferring the assets to the adminis-

tratrix. Assuming the validity of the bond as between these parties, the expressed object was to assure himself that the administration would be properly conducted by her, and she would pay all such debts as the estate was liable to pay to such extent (the estate being solvent or insolvent) as both the administrator and administratrix would be liable to pay them out of the assets applicable to the debts.

This bond broken, gave to none of the creditors of the estate (other than Pittman personally) any right of action upon it to recover their claims, either to their full amount or *pro rata;* such creditors were neither parties nor privies to it, and no equitable rights vested in them are set up or pretended in this suit.

The declaration or complaint in this suit, indeed, sets out the purpose of the obligee, that he "informed the said Rebecca L. that he was about to remove to California, and desired to be released from his responsibilities as said administrator, so that he might be held harmless against the claims which had been presented, or might hereafter be presented, against said estate, and the said Rebecca L. Myrick being exceedingly anxious, as plaintiff believes, to get the entire control of the estate, and thinking thereby, as plaintiff believes, that she would be benefited by it," she and Russ executed the bond.

There is no doubt whatever that this recital in the complaint expresses precisely the intention of the parties, and we agree with the pleader that this is the effect of the bond. But it is insisted that because the plaintiff here was the administrator of the Hathaway estate, and the note in question was made payable to him as administrator of that estate, and because he as administrator of the Myrick estate had possessed and had surrendered to defendant as administratrix assets of this estate more than sufficient to pay the Hathaway claim, thereby he had made himself liable to the

Hathaway estate, and might be obliged to pay the amount thereof to the heirs of Hathaway, and therefore, in order that he might be saved harmless, he might recover the amount claimed by suit upon the bond. This position is not tenable. It is not alleged or proved that he has paid anything to the Hathaway estate or the heirs on account of this claim, or that he has been subjected to suit thereon which has fixed his liability to pay that estate or the distributees thereof, and until his legal liability to the Hathaway heirs or distributees, or to that estate, *growing out of his relations with the estate of Myrick,* shall have been established, there can be no recovery upon the bond in question, for until it be shown that he is damnified he cannot claim the indemnity.

The bond, by its condition, secures him against all debts and demands that shall be brought against the estate of Myrick, and against all claims and demands that may be brought or presented against the said Frederick R. Pittman as administrator of the estate of Myrick; and she binds herself that having the assets of that estate placed in her hands, she will administer and pay to the same extent that either or both would be held liable to the creditors of the estate to pay its debts.

Her liability to pay the debts of her intestate was not enhanced by the giving of the bond, either in her fiduciary capacity or personally, but the personal obligation extends by the bond to indemnifying him against any liability incurred by him as an administrator of the Myrick estate; a personal indemnity. Counsel for appellee cite several cases from the digests. That of Duvall vs. Snowden, (7 G. & J., Md.,) was the case of an action against an executor who had given bond to pay the debts, and was thus relieved of the necessity of returning an inventory under the statute, in which case he was by the statute made directly liable to creditors and legatees. In Carman vs. Noble, (9 Pa. St., 366,) it was held

that an agreement to indemnify a surety against debt or damage was broken by a recovery of judgment against the surety. In Bellune vs. Wallace, (2 Rich., S. C., 80,) and Leber vs. Kauffelt, (5 Watts & S., 40,) an ascertained liability to pay is a breach of a condition to indemnify and save harmless, and the party may sue before sustaining loss.

These cases do not touch the question. The appellee also cites St. Albans vs. Curtis, (1 D. Chipman, Vt., 164,) which he claims is directly in point: "Where the condition of a bond of indemnity is simply to save harmless from the payment of a debt, it is not broken until the obligee has been compelled to pay, or, having become liable, has paid or been put to expense. But if it be that the obligor shall pay the debt and discharge the obligee *therefrom*, and also save harmless, &c., upon the debt coming and no payment nor discharge, there is a breach." We have not access to the volume, but it is apparent that the obligee in that case was a debtor, principal or surety, and there was an ascertained or unquestioned liability to pay and a direct covenant to discharge from such liability. This is not such a case.

The case of Franks, *et al.*, vs. Hamilton, (29 Geo., 139,) to which we are referred by appellant, was a suit upon a bond conditioned that "if the said W. L. Franks and C. J. Stevens shall pay or cause to be paid the aforesaid promissory note, (indorsed by Hamilton) so that, in no event, it shall be collected, or attempted to be collected, from the aforesaid Hamilton, endorser as aforesaid, then," &c. The court in its opinion say, "a collection of the note from Hamilton, or an attempt at its collection from him, was essential to a breach of the condition." This is a somewhat similar bond to the one before us, containing a condition to pay "so that," or to the end that Pittman shall be saved harmless. But here we have the further condition that the amount of the indebtednees, *from which Pittman was to be protected*, is contingent, his liability is not ascertained, and therefore

there is no personal liability upon Mrs. Myrick which Pittman or his representatives in his individual right is entitled to recover. And there is the further direct statement of the bond in the case of Franks vs. Hamilton, that Hamilton is the endorser of the note, and the obligor is bound to pay it, "so that in no event it shall be collected, or attempted to be collected, from Hamilton." In the case at bar the complaint recites that Pittman "desired to be relieved from his responsibilities as said administrator so that he might be held harmless" against claims presented, or to be presented, against the estate of Myrick; and this is the effect of the condition of this bond, that Pittman as administrator shall be saved harmless and discharged.

Because there is in the complaint no allegation, and in the record no proof, that Pittman has been made liable to pay, or that he has paid anything on account of any liability then or subsequently incurred by him as such administrator, we do not find that there has been any such breach of the condition as entitles him to maintain this action and recover from the obligor any money that is not due directly to himself.

The result is that this judgment must be reversed and set aside, both as to Mrs. Myrick and her surety, Russ, as there can be no judgment against Russ which does not bind Mrs. Myrick as principal to save him harmless.

This cause must be remanded, with directions to dismiss the suit, unless the plaintiff shall amend the complaint so as to show a right of action for the amount due on the note in question, according to terms and conditions of her bond.